1    MATERN LAW GROUP
2    Matthew J. Matern (SBN 159798)
     mmatern@maternlawgroup.com
3    Tagore O. Subramaniam (SBN 280126)
     tagore@maternlawgroup.com
4    1230 Rosecrans Avenue, Suite 200
     Manhattan Beach, California 90266
5    Telephone: (310) 531-1900
     Facsimile: (310) 531-1901
6
7    Attorneys for Plaintiff
     PETER GALLAGHER
8
9
                    UNITED STATES DISTRICT COURT
10
          CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION
11

| | |
|---|---|
| 12 PETER GALLAGHER, an individual, | Case No. |
| 13 | |
| Plaintiff, | **COMPLAINT FOR DAMAGES FOR:** |
| 14 | |
| vs. | **1. COPYRIGHT INFRINGEMENT** |
| 15 | |
| LIONS GATE ENTERTAINMENT | **DEMAND FOR JURY TRIAL** |
| 16 INC., a Delaware corporation; | |
| LIONS GATE FILMS INC., a | |
| 17 Delaware corporation; MUTANT | |
| ENEMY, INC., a California | |
| 18 corporation; JOSEPH "JOSS" | |
| WHEDON, an individual; | |
| 19 ANDREW GODDARD, an | |
| individual; and DOES 1 through 50, | |
| 20 inclusive, | |
| 21 Defendants. | |
| 22 | |

23
24
25
26
27
28

Plaintiff PETER GALLAGHER ("PLAINTIFF"), an individual, demanding a jury trial, hereby alleges as follows against Defendants LIONS GATE ENTERTAINMENT INC., a Delaware corporation, LIONS GATE FILMS INC., a Delaware corporation, MUTANT ENEMY, INC., a California corporation, JOSEPH "JOSS" WHEDON, an individual, ANDREW GODDARD, an individual, and DOES 1 through 50, inclusive (collectively, "DEFENDANTS"):

## JURISDICTION AND VENUE

1.      This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*  This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  PLAINTIFF's alleged damages exceed the jurisdictional minimum of this Court.

2.      Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a) as a substantial part of the events or omissions giving rise to the claim occurred, and the defendants and/or their agents reside and/or maintain their principal place of business, in this judicial district.

## PARTIES

3.      PLAINTIFF is an individual who resides in Flagstaff, Arizona. PLAINTIFF is the author and owner of all exclusive rights under copyright of a literary work entitled *The Little White Trip: A Night in the Pines* (hereafter "the Book" or "Little White Trip").

4.      PLAINTIFF is informed and believes, and on that basis alleges, that Defendant LIONS GATE ENTERTAINMENT INC. ("LGE") is a corporation existing under the laws of Delaware and maintaining its principal place of business at 2700 Colorado Avenue, Suite 200, Santa Monica, California 90404. PLAINTIFF is further informed and believes, and on that basis alleges, that LGE is qualified to do business and is doing business in the State of California, County of Los Angeles.  PLAINTIFF is also informed and believes, and on that basis alleges, that LGE is a motion picture production company and distributor, with numerous

film credits, and according to the Internet Movie Database ("IMDB") is one of the production companies and distributors of the motion picture entitled *The Cabin in the Woods* (hereafter the "Film" or "Cabin in the Woods"), released theatrically on April 13, 2012 in the United States.

5.     PLAINTIFF is informed and believes, and on that basis alleges, that Defendant LIONS GATE FILMS INC. ("LGF") is a corporation existing under the laws of Delaware and maintaining its principal place of business at 2700 Colorado Avenue, Suite 200, Santa Monica, California 90404.  PLAINTIFF is further informed and believes, and on that basis alleges, that LGF is qualified to do business and is doing business in the State of California, County of Los Angeles. PLAINTIFF is also informed and believes, and on that basis alleges, that LGF is a motion picture production company and distributor, with numerous film credits, and according to IMDB is one of the production companies and distributors of the Film.

6.     PLAINTIFF is informed and believes, and on that basis alleges, that Defendant MUTANT ENEMY, INC. ("MUTANT ENEMY") is a corporation existing under the laws of California and maintaining its principal place of business in the State of California, County of Los Angeles.  PLAINTIFF is further informed and believes, and on that basis alleges, that MUTANT ENEMY is qualified to do business and is doing business in the State of California, County of Los Angeles. PLAINTIFF is also informed and believes, and on that basis alleges, that MUTANT ENEMY is a motion picture production company, with numerous film and television credits, and according to IMDB is one of the production companies of the Film.

7.     PLAINTIFF is informed and believes, and on that basis alleges, that Defendant JOSEPH "JOSS" WHEDON ("WHEDON") is an individual residing in the city of Santa Monica in Los Angeles County, California.  PLAINTIFF is further informed and believes, and on that basis alleges, that WHEDON is a writer,

director, and producer with numerous film and television credits, and according to IMDB is the producer and a credited writer of the Film.

8.    PLAINTIFF is informed and believes, and on that basis alleges, that Defendant ANDREW GODDARD ("GODDARD") is an individual residing in Los Angeles County, California.  PLAINTIFF is further informed and believes, and on that basis alleges, that GODDARD is a writer, director, and producer with numerous film and television credits, and according to IMDB is the director and a credited writer of the Film.

9.    The true names and capacities of Defendants DOES 1 through 50, inclusive, are presently unknown to PLAINTIFF, who therefore sues these Defendants by such fictitious names.  PLAINTIFF is informed and believes, and thereon alleges, that each Defendant designated as a DOE is in some manner responsible for the occurrences alleged herein and that the injuries and damages suffered by PLAINTIFF were proximately caused by the conduct of such DOE Defendants.  PLAINTIFF will seek leave of Court to amend this Complaint to allege the true names and capacities of each DOE Defendant, together with such allegations as may be appropriate, when their names have been ascertained.

10.   PLAINTIFF is informed and believes, and thereon alleges, that, at all times material to this Complaint, each Defendant was the agent, servant, employee, partner, successor, assignee, alter ego, integrated enterprise, co-conspirator, joint venture and/or franchisee of each of the remaining Defendants herein, and was at all times acting within the course and scope of said agency, service, employment, partnership, integrated enterprise, joint venture and/or franchise.  PLAINTIFF is further informed and believes, and thereon alleges, that each act and omission alleged herein on the part of any one Defendant was done with the approval and consent and was ratified by each of the remaining Defendants.

11.   PLAINTIFF is informed and believes, and thereon alleges, that, at all times material to this Complaint, each Defendant may be held liable for the

infringing acts committed by another Defendant to the extent that each Defendant had the right and ability to control the infringing activities alleged herein and had a direct financial interest in such activities, regardless of whether each Defendant had intent or knowledge of the infringement alleged herein.  Furthermore, PLAINTIFF is informed and believes, and thereon alleges, that at all relevant times mentioned in this Complaint each Defendant who knowingly induced, caused, or materially contributed to the infringement alleged herein by another Defendant, but who may not have committed or participated in the infringing acts himself or itself, may be held liable as a contributory infringer as each such Defendant had knowledge, or reason to know, of the infringement.

### BACKGROUND FACTUAL ALLEGATIONS

12.     PLAINTIFF is the author and owner of all exclusive rights under copyright of the literary work entitled *The Little White Trip: A Night in the Pines* (the "Book").  PLAINTIFF registered the Book with the Writers Guild of America ("WGA") in or about July 2007.  PLAINTIFF has filed a complete application to register the Book for copyright registration with the United States Copyright Office. PLAINTIFF reserves the right to amend this Complaint upon receipt of the issued registration certificate.

13.     In or about the middle of 2004, PLAINTIFF developed the idea for what would become the Book.  PLAINTIFF subsequently created a short outline of the idea for the Book in 2004.

14.     After several months of intensive writing, PLAINTIFF completed an initial draft of the Book in or about January 2005.

15.     On May 11, 2005, PLAINTIFF had an original unedited manuscript bound and notarized.

16.     From May 2005 through part of 2006, PLAINTIFF worked with various editors to finalize the Book.

17.     In or about June 2006, PLAINTIFF published and made available for

sale approximately 2500 copies of the Book.

18.     PLAINTIFF subsequently began grassroots efforts to sell the Book in Los Angeles, California.  PLAINTIFF sold copies of the Book on the Venice Beach Boardwalk, the Santa Monica Free Speech Zone on the popular 3rd Street Promenade, and outside the Chinese Theatre on the Hollywood Walk of Fame. The majority of PLAINTIFF's sales were done in the Venice Beach and Santa Monica, California areas. PLAINTIFF's marketing efforts further included distributing approximately ten thousand fliers in the Santa Monica and Venice, California areas. Additionally, PLAINTIFF maintained a website and Myspace page for the Book. The Book was further available at multiple retail locations, including Small World Books in Venice, California and online retailers such as Amazon.com. The Book was discussed on multiple blogs as wells as social media websites such as Goodreads.com.

19.     During this time, PLAINTIFF was contacted by multiple credited entertainment industry producers who expressed interest in the Book.

20.     DEFENDANTS WHEDON, LGF, and LGE currently reside and operate out of Santa Monica, California, a short distance from where the Book was sold.

21.     In or about September 2006 PLAINTIFF received an email from the chair of the Johnnie Cochran Middle School English department expressing interest in the Book. The school subsequently ordered 300 copies of the Book and, for a period of time, it was required reading.

22.     Having nearly sold out the first print of the Book, in or about June, 2007, Plaintiff had an additional 5000 copies of the Book printed.

23.     As a result of PLAINTIFF's successful marketing and sales, on April 2, 2007 the Long Beach Gazette published a profile on PLAINTIFF discussing the Book.  The Long Beach Gazette quoted PLAINTIFF as marketing the Book as "a different way of telling a story you think you've heard before."  The tagline for the

Film is strikingly similar: "You think you know the story."

24.     In or about July 2007, PLAINTIFF registered the Book with the Writers Guild of America (WGA registration number 1217522).

25.     From approximately June 2006 to November 2007, PLAINTIFF distributed and sold approximately 5000 copies of the Book, primarily in the Santa Monica and Venice Beach areas.

26.     On April 13, 2012, DEFENDANTS theatrically released the Film in the United States.

27.     Like the Book, the Film tells the story of five friends (three males and two females) between the ages of 17 and 22 who take a take a trip to a remote cabin in the woods.  The cabin's previous inhabitants were murdered by the father of the family, who returns to terrorize the group of friends.  Throughout, the friends are being filmed and manipulated by persons behind the scenes, inadvertently playing characters in a real-life horror show.  The similarities between the two works are striking.  Even the names of the lead characters are similar. In the Book, the lead female blonde and brunette characters are named Julie and Dura respectively, whereas in the Film they are named Jules and Dana.  Similarly, the cabin in the Book is called the "Brinkley Cabin," whereas it is the "Buckner Cabin" in the Film.

28.     A review of the IMDB webpage for the Film and the promotional movie poster for the Film found therein and elsewhere confirms that WHEDON is a producer and a credited writer of the Film, GODDARD is the director and a credited writer of the Film, LGE and LGF are production companies and distributors of the Film, MUTANT ENEMY is a production company of the Film, and the Film was released theatrically on April 13, 2012 in the United States.

29.     PLAINTIFF is informed and believes, and on that basis alleges, that the Film borrows heavily from the Book.  Comparing the Book to the Film, the plots, stories, characters, sequence of events, themes, dialogue, and incidents portrayed in the two works are fictional and, in many respects, the elements in the

1    two works are virtually identical.  These substantially similar elements, coupled

2    with DEFENDANTS' access to PLAINTIFF'S Book, which was widely

3    disseminated in the Southern California are and on the Internet, where it was

4    available for sale on websites such as Amazon.com, leave little doubt that

5    numerous substantive original elements of the Book are copied in the Film.

## FIRST CLAIM FOR RELIEF

### (COPYRIGHT INFRINGEMENT)

**[17 U.S.C. § 101 *et seq.*]**

**(Against All DEFENDANTS)**

10       30.    PLAINTIFF re-alleges each and every allegation set forth in

11   Paragraphs 1 through 29, inclusive, and incorporates them herein by this reference.

12       31.    PLAINTIFF is currently, and at all relevant times has been, the sole

13   owner of all right, title, and interest in and to the copyrights in the Book.

14       32.    PLAINTIFF is informed and believes, and on that basis alleges, that

15   DEFENDANTS were knowingly and willfully involved in the copying of the Book

16   and original elements therein to create a work substantially similar to and derivative

17   of PLAINTIFF's copyrighted Book.  PLAINTIFF is informed and believes that a

18   non-exhaustive summary of substantial similarities between the respective works

19   includes but is not limited to:

### (a) THEME

21       Each work has a core theme of horror, resulting from unknowingly being

22   manipulated by third parties.  These thematic similarities are echoed by statements

23   from the Film's creators, DEFENDANTS WHEDON and GODDARD.  When

24   asked in an interview what the original idea for the Film was at its core, WHEDON

25   responded by stating, "[T]he original idea was exactly what the movie is, which is,

26   you play your normal horror movie —five kids go to a cabin in the woods—and

27   you find out that everything they're doing is being manipulated."  GODDARD

28   stated in an interview that "the base element of [the Film] – [is] how do kids do this

[act like they do in horror films], what if someone was making them behave that way."

Both works display a self-referential awareness of classic horror movie tropes and insert third-party puppeteers to manipulate the characters for the fulfillment of narrative requirements and the enjoyment of others.

### (b) PLOT

Like the Book, Cabin in the Woods tells the story of five friends (three guys and two girls) between the ages of 17 and 22 who take a take a trip to a remote cabin in the woods.  The cabin's previous inhabitants were murdered by the father of the family, who returns to terrorize the group of friends.  In the end, it is revealed that the friends are being filmed and manipulated by persons behind the scenes, thus becoming inadvertent characters in a real-life horror show for the enjoyment of others.

### (c) SETTING

The setting of each work takes place in a remote cabin in the woods, where the prior inhabitants of the cabin were murdered.

### (d) CHARACTERS

The similarities between the characters in both works are striking.  Both works have five lead characters between the ages of 17 and 22 (three males and two females). The group of friends consists of two couples and one male.  The female leads in both works include a bubbly blonde with blue eyes, and a sweet dark haired female who recently ended a relationship.   Even the names of the lead characters are similar.  The name of the lead blonde in the Book is Julie and in the Film it is Jules. Similarly the name of the lead brunette in the Book is Dura and in the Film it is "Dana". Even the name of the remote cabin the characters travel too is similar. The cabin in the book is referred to as the "Brinkley Cabin" and in the film it is the "Buckner Cabin." In both works the female brunette lead (Dura/Dana) has a romantic relationship with the more sensitive, shy, and mature male (Matt/Holden)

1  which culminates in a love scene in front of the fireplace.  Similarly, in both works

2  the female blonde lead (Julie/Jules) has a relationship with the strong, charismatic

3  male character who drinks regularly and looks like a movie star (Ian/Curt). The

4  appearance and behavior of the third male lead (Sam/Marty) is similar in both

5  works. Both have quirky personalities, have messy dirty blonde hair, wear a grey

6  shirt and jeans throughout the film, smoke marijuana, and enjoy gazing up at the

7  stars.

8  (e) MOOD

9  Both works have a similar mood in that they are horror films that begin with

10  the enthusiasm of a group of friends going on a trip, followed by the excitement of

11  a night of drinking and romance at a cabin in the woods.  The mood then shifts to a

12  series of frightening murders which culminates in a surprise reveal that the lead

13  characters are being manipulated for the enjoyment of third parties.

14  (f) PACE

15  The pace of each work is extremely similar.  Both are horror films,

16  punctuated with a series of deaths, followed by a surprise reveal that the lead

17  characters are being manipulated for the enjoyment of third parties.

18  (g) SEQUENCE OF EVENTS

19  Similar to the plot, the sequence of key events in in both works tells the story

20  of five friends (three guys and two girls) between the ages of 17 and 22 who take a

21  take a trip to a remote cabin in the woods. The cabin's previous inhabitants were

22  murdered by the father of the family, who returns to terrorize the group of friends.

23  Throughout, the friends are being filmed and manipulated by persons behind the

24  scenes, thus becoming inadvertent characters in a real-life horror show.

25  (h) SCENE SIMILARITIES

26  A non-exhaustive list of some of the specific scene similarities between each

27  work is set forth below:

28  / / /

10

| | | *The Little White Trip: A Night in the Pines* | *The Cabin in the Woods* |
|---|---|---|---|
| | 1. | Group of five friends who recently graduated from high school (two couples and one guy) go on a getaway to a remote cabin in the woods. | Group of five college friends (two couples and one guy) go on a getaway to a remote cabin in the woods. |
| | 2. | Female lead names are Julie (blonde and blue eyes) and Dura (brunette). | Female lead names are Jules (blonde and blue eyes) and Dana (brunette). |
| | 3. | The lead characters take a vehicle to a remote cabin in the woods. | The lead characters take a vehicle to a remote cabin in the woods. |
| | 4. | The cabin the protagonists are going to is referred to as the "Brinkley house." | The cabin the protagonists are going to is referred to as the "Buckner house." |
| | 5. | As the friends are on their way to the cabin, they run into a local townie (bartender) who warns them that something is wrong with the cabin and then directs them to its location. The townie is working for third parties manipulating the events. | As the friends are on their way to the cabin, they run into a local townie (gas station attendant) who warns them that something is wrong with the cabin and directs them towards the location. The townie is working for third parties manipulating the events. |
| | 6. | The friends arrive at the cabin | The friends arrive at the cabin which |

COMPLAINT

| | | | |
|---|---|---|---|
| | | which does not have cell phone reception. | does not have cell phone reception. |
| | 7. | The first night in the cabin the characters stumble on an old storage area (attic). | The first night in the cabin the characters stumble on an old storage area (basement). |
| | 8. | In the storage area the friends uncover some objects (toy figurines, dolls, and photos) belonging to the family that previously lived there. | In the storage area the friends uncover some objects (toy figurines, dolls, photos, and a diary) belonging to the family that previously lived there. |
| | 9. | In the storage area, female lead (Julie) finds an object (Hummel figurine) that she would like to take. | In the storage area, female lead (Jules) finds an object (amulet) that she would like to take. |
| | 10. | While on their trip, the protagonists learn that the house belonged to a family (the Brinkleys) where the father killed the mother, and the rest of the family (three children) died. | While on their trip, the protagonists learn that the house belonged to a family (the Buckners) where the father killed the mother, and the rest of the family (presumably three children – Anna, Judda, and Matthew) died. |
| | 11. | The protagonists begin to drink alcohol and to play games. | The protagonists begin to drink alcohol and to play games. |

COMPLAINT

| | | |
|---|---|---|
| 12. | At the end of that first night, one of the couples (Julie and Ian) go off to be together (upstairs to bed)  and leave the other three alone, the courting new couple (Dura and Matt) and the odd man out (Sam). | At the end of that first night, one of the couples (Curt and Jules) go off to be together (in the woods) and leave the other three alone, the courting new couple (Dana and Holden) and the odd man out (Marty). |
| 13. | The female brunette lead, Dura, has a romantic scene on a couch with the sensitive, shy male lead (Matt) in front of the fireplace. | The female brunette lead, Dana, has a romantic scene on a couch with sensitive, shy male lead (Holden) in front of the fireplace. |
| 14. | The female brunette lead Dura is getting over a relationship. | The female brunette lead Dana is getting over a relationship. |
| 15. | The outsider male lead (Sam) who is not romantically involved with any of the females smokes marijuana and walks outside to look at the stars. | The outsider male lead (Marty) who is not romantically involved with any of the females smokes marijuana and walks outside to look at the stars. |
| 16. | Female lead (Dura) gets attacked, stabbed, and killed off by homicidal Brinkley father that previously lived there. | Female lead (Jules) gets attacked, stabbed, and killed off by homicidal Buckner father (zombie version) that previously lived there. |
| 17. | Male lead (Sam) is killed. | Male lead (Curt) is killed. |

13

| | | |
|---|---|---|
| 18. | To persuade others who are in disbelief of the first lead character's death, a severed body part (arm) is shown as evidence. | To persuade others who are in disbelief of the first lead character's death a severed body part (head) is shown as evidence. |
| 19. | Male lead (Ian) gets attacked and killed off outside the cabin by homicidal Brinkley father that previously lived there. | Male lead (Holden) gets attacked, and killed off outside the cabin by presumably homicidal Buckner father (zombie version) that previously lived there. |
| 20. | Lead male (Matt) begins to suspect that the group is being manipulated by third party "puppeteers." | Lead male (Marty) begins to suspect that the group is being manipulated by third party "puppeteers." |
| 21. | Lead male knocks over a ceramic object (vase) and discovers a camera inside set up to observe the friends. | Lead male knocks over a ceramic object (lamp) and discovers a camera inside set up to observe the friends. |
| 22. | Only two protagonists remain, no couples, one male lead (Matt) and one female lead (Julie). | Only two protagonists remain, no couples, one male lead (Marty) and one female lead (Dana). |
| 23. | It is revealed that the friends have been manipulated by third parties for a new form of reality | Lead character (Marty) suspects that he is being manipulated by a reality television show. |

| | |
|---|---|
| filmmaking attempting to capture real fear in its subjects. | |
| 24. The third party manipulators celebrate a job well done.  In the background large flat screens play horror scenes.  It's an odd juxtaposition to the horror that has just happened. | The third party manipulators celebrate a job well done. In the background large flat screens play horror scenes.  It's an odd juxtaposition to the horror that has just happened. |
| 25. The "director" (film director) reveals the film's twist, that the lead characters have been watched and manipulated by a crew of others for the enjoyment of viewers. | The "Director" reveals the film's twist, that the lead characters have been watched and manipulated by a crew of others for the enjoyment of viewers. |

33.    PLAINTIFF is further informed and believes, and on that basis alleges, that DEFENDANTS' copying of the Book infringes PLAINTIFF's copyright and that DEFENDANTS are distributing, and intend to continue to distribute, unauthorized works similar to and derivative of the Book.

34.    The natural, probable, and foreseeable result of DEFENDANTS' wrongful conduct has been, and will continue to be, to deprive PLAINTIFF of the benefits deriving from the exploitation of the copyrighted literary work, and to deprive PLAINTIFF of the goodwill that would necessarily be associated therewith.

35.    PLAINTIFF is informed and believes, and on that basis alleges, that PLAINTIFF has lost, and will continue to lose, substantial revenues from the

production and sale of the Film and has sustained, and will continue to sustain, damages as a result of DEFENDANTS' wrongful conduct and DEFENDANTS' production and sale of their infringing Film and other unauthorized works derivative of the Book.  PLAINTIFF is further informed and believes, and thereon alleges, that DEFENDANTS' wrongful conduct has deprived, and will continue to deprive, PLAINTIFF of opportunities for expanding the goodwill associated with the Book.

36.    By their actions alleged above, DEFENDANTS have infringed and will continue to infringe PLAINTIFF's copyright in and relating to the Book by producing, distributing, and placing upon the market products which are derivative of PLAINTIFF's copyrighted Book.

37.    PLAINTIFF is further entitled to recover from DEFENDANTS the damages, including attorney's fees and costs, PLAINTIFF has sustained and will sustain, and any gains, profits, and advantages obtained by DEFENDANTS as a result of DEFENDANTS' acts of infringement alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by PLAINTIFF, but PLAINTIFF is informed and believes, and thereon alleges, that such damages equal or exceed $10,000,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF prays for judgment against DEFENDANTS as follows:

1.    That the Court find that DEFENDANTS have infringed PLAINTIFF's copyrights in the Book;

2.    That the Court find a substantial likelihood that DEFENDANTS will continue to infringe PLAINTIFF's copyrights in the Book unless enjoined from doing so;

3.    That DEFENDANTS, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with

them, be enjoined from directly or indirectly infringing PLAINTIFF's copyrights in the Book or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived or copied from the Book or to participate or assist in any such activity;

4.     That DEFENDANTS, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined to recall from all distributors, wholesalers, jobbers, dealers, retailers, and distributors, and all others known to DEFENDANTS, any originals, copies, facsimiles, or duplicates of any works shown by evidence to infringe any copyright in the Book;

5.     That DEFENDANTS be enjoined to deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all originals, copies, facsimiles, or duplicates of any work shown by the evidence to infringe any copyright in the Book;

6.     That DEFENDANTS be required to file with the Court and to serve on PLAINTIFF, within 30 days after service of the Court's order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which DEFENDANTS have complied with the Court's order;

7.     That at PLAINTIFF's election, if so made, judgment be entered for PLAINTIFF and against DEFENDANTS for PLAINTIFF's actual damages according to proof, and for any profits attributable to infringements of PLAINTIFF's copyrights in the Book, in accordance with proof.

8.     That at PLAINTIFF's election, if so made, judgment be entered for PLAINTIFF and against DEFENDANTS for statutory damages based upon DEFENDANTS' acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*;

9.     That DEFENDANTS be required to account for all of their gains, profits, and advantages derived from DEFENDANTS' acts of infringement and for

their other violations of law alleged herein;

      10.    That all gains, profits, and advantages derived by DEFENDANTS from their acts of infringement and other violations of law alleged herein be deemed to be held in constructive trust for the benefit of PLAINTIFF;

      11.    That PLAINTIFF have judgment against DEFENDANTS for PLAINTIFFS' costs and attorney's fees;

      12.    That the Court grant such other and further relief as the Court deems just and proper under the circumstances.

DATED: April 13, 2015        Respectfully submitted,

                        MATERN LAW GROUP

                By:  /s/ Matthew J. Matern
                     MATTHEW J. MATERN
                     TAGORE O. SUBRAMANIAM
                     Attorneys for Plaintiff
                     PETER GALLAGHER

## **DEMAND FOR JURY TRIAL**

     PLAINTIFF hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: April 13, 2015        Respectfully submitted,

                        MATERN LAW GROUP

                By:  /s/ Matthew J. Matern
                     MATTHEW J. MATERN
                     TAGORE O. SUBRAMANIAM
                     Attorneys for Plaintiff
                     PETER GALLAGHER

COMPLAINT