O

# United States District Court
# Central District of California

PETER GALLAGHER,

               Plaintiff,

     v.

LIONS GATE ENTERTAINMENT INC., LIONS GATE FILMS INC., MUTANT ENEMY, INC., JOSEPH "JOSS" WHEDON, ANDREW GODDARD, and DOES 1–50, inclusive,

               Defendants.

Case No. 2:15-cv-02739-ODW-E

**ORDER GRANTING ATTORNEY'S FEES AND COSTS PURSUANT TO 17 U.S.C. § 505 [29]**

## I. INTRODUCTION

Plaintiff Peter Gallagher ("Plaintiff" or "Gallagher")[1] brought suit against Defendants Lions Gate Entertainment Inc., Lions Gate Films Inc., Mutant Enemy, Inc., Joseph "Joss" Whedon, Andrew Goddard, and Does 1 through 50 (collectively "Defendants") for copyright infringement of his book *The Little White Trip: A Night in the Pines* ("*Trip*") by Defendants and their film, *The Cabin in the Woods* ("*Cabin*").

---

[1] After filing this lawsuit, Plaintiff married and legally changed his name from "Gallagher" to "Green." (Gallagher Decl. 1.) For purposes of this order, the Court will continue to refer to Plaintiff by his prior surname, as listed on the case caption.

(ECF No. 15, First Amended Complaint ("FAC").) On September 11, 2015, this Court granted Defendants' Motion to Dismiss all of Plaintiff's claims. (ECF No. 27.) As the prevailing party, Defendants now move for attorney's fees under Section 505 of the Copyright Act. 17 U.S.C. § 505. For the reasons set forth below, Defendants' Motion for Attorney's Fees and Costs is **GRANTED**.

## I. BACKGROUND

### A. Factual History

Gallagher is the author and owner of all exclusive rights under copyright of the literary work *Trip*. (ECF No. 15, FAC ¶ 12.) Gallagher developed the idea for *Trip* and drafted an outline of that idea in 2004; he then completed the initial draft between late 2004 and early 2005. (*Id.* ¶¶ 13–14.) *Trip* was published in or about June 2006, with 2,500 copies of the book printed for sale. (*Id.* ¶ 17.) Gallagher then began selling copies of *Trip* on the Venice Beach Boardwalk, the Santa Monica Third Street Promenade, and outside the Chinese Theatre on the Hollywood Walk of Fame. (*Id.* ¶ 18.) Over the course of one and a half years, Gallagher sold approximately 5,000 copies of the book, primarily in the Santa Monica and Venice Beach areas. (*Id.* ¶ 25.)

Defendants are the writers, producers, and distributors of the movie *Cabin*, which was released in 2012. (*Id.* ¶¶ 4–8.) All Defendants other than Andrew Goddard and Mutant Enemy, Inc. reside or operate out of Santa Monica, with the other two Defendants listed as residing or operating out of Los Angeles County. (*Id.*) Gallagher alleged that *Cabin* copied extensively from *Trip* in addition to having access and thereon bases his allegations of copyright infringement. (*Id.* ¶ 29.)

### B. Procedural History

Gallagher first contacted Defendants on January 7, 2014, after being "stricken" by what he perceived to be similarities between *Cabin* and his own creative work. (Green[2] Decl., ¶ 6; Kim Decl., Ex 1 10.) Plaintiff claims Defendant Lions Gate sent a reply letter dated January 21, 2014, informing Gallagher that Lions Gate would

---

[2] Peter Green and Peter Gallagher are one and the same. *See supra* note 1.

investigate his claims.[3] (Green Decl. ¶ 7.) On February 11, 2014, Plaintiff responded by outlining how he conceived of the idea for *Trip,* explaining the book's availability, and implicitly demanded seven million dollars in damages. (Kim Decl., Ex. 1 14–15; Ex. 2.) Defendants responded through outside counsel on March 31, 2014, charting the reasons why Gallagher could not meet the accessibility and substantial similarity requirements under the Copyright Act. (Kim Decl. Ex. 3 18–19.) In closing, Defendants made clear that, should Gallagher proceed with his claims and file suit, Defendants would seek attorney's fees and costs as provided by the Copyright Act. (*Id.* at 19.) Gallagher made no attempt to communicate with Defendants for over a year; Gallagher then filed his Complaint in this Court on April 13, 2015. (ECF No. 1.) Gallagher failed to serve the Complaint. (Mot. 2.)

On May 1, 2015, Defendants provided Plaintiff's Counsel with a detailed, eleven-page document outlining the controlling case law governing Copyright Act claims in this District and explained that Plaintiff's claims could not meet the accessibility and substantial similarity requirements of the Act. (Kim Decl. Ex. 4 20–30.) Again, Defendants urged Plaintiff to withdraw his Complaint, or Defendant would seek attorney's fees and costs. (*Id.* at 28–29.) Counsel for both parties spent the next several weeks trading phone calls and emails in accordance with the Court's meet-and-confer requirements under Local Rule 7.3. (Kim Decl., Ex. 5.) With Plaintiff still refusing to withdraw his Complaint, Defendants moved to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11.) The next day, Plaintiff filed a First Amended Complaint. (ECF No. 15.) Defendants then moved to dismiss the FAC in its entirety. (ECF No. 18.)

After assessing the briefing from both parties on the 12(b)(6) motion, the Court granted Defendant's motion, finding no substantial similarity. (ECF No. 27, Order.) Defendants now move for attorney's fees and costs, pursuant to Section 505 of the Copyright Act. 17 U.S.C. § 505.

---

[3] Neither party has included a copy of this letter, though Plaintiff references it in his opposition papers and declaration.

## II. LEGAL STANDARD

### A. Standard for Recovery of Attorney Fees in Copyright Cases

The Copyright Act grants the court discretion to determine a prevailing party's recovery of costs and attorney fees in a copyright case. 17 U.S.C. § 505. When making such a determination, the court may consider several nonexclusive factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 535 n.19 (1994) (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986) (the "*Lieb* factors")). The court must also consider the degree of success obtained by the prevailing party. *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994) *overruled on other grounds by Fogerty*, 510 U.S. at 531–2 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

While the discretion to award fees and costs does not require an explicit finding of bad faith or blameworthiness on behalf of the losing party, any improper motives or "culpability in bringing or pursuing the action" may also influence this determination. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555–58 (9th Cir. 1996). Finally, when applying the above factors, a court must do so while remaining "faithful to the purposes of the Copyright Act," which include not only "[securing] a fair return for an 'author's creative labor,'" but also the "[stimulation of] artistic creativity for the general public good." *Fogerty*, 510 U.S. at 526–27 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)). If an award of fees would not comport with these policies, then fees should not be awarded. *Fantasy, Inc.*, 94 F.3d at 558.

### B. Reasonable Fees: Calculating the Lodestar

A reasonable fee award is initially determined by calculating the "lodestar" figure: the number of hours reasonably expended multiplied by a reasonable hourly rate. *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992); *Hensley*, 461 U.S. at 433; *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). At the outset, "[t]he

fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." *Gates*, 987 F.2d at 1397. "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (1987).

The determination of the number of hours reasonably expended is also informed by the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and adopted in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975); *see Chalmers*, 796 F.2d at 1211. The *Johnson-Kerr* factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience; reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases, though those that are irrelevant to the particular case need not be considered. *Kerr*, 526 F.2d at 69–70; *Hensley*, 461 U.S. at 363–64; *but see Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), *vacated in part as moot by Davis v. City and Cnty. of San Francisco*, 984 F.2d 345 (9th Cir. 1993) (recognizing the irrelevance of the sixth *Johnson-Kerr* factor, and the "doubt[ful] relevance" of factor ten).

The lodestar calculation is strongly presumed to yield a reasonable fee. *City of Burlington*, 505 U.S. at 562; *Gates*, 987 F.2d at 1397. However, a court may depart from the lodestar amount if doing so is "necessary to the determination of a reasonable fee." *City of Burlington*, 505 U.S. at 562 (quotations and citation omitted). If the

court determines that such departure is necessary, the court must provide a "concise but clear" explanation for the reduction. *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001); *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 437). The Ninth Circuit interprets this language to require "the district court to give at least some indication of how it arrived at the amount of compensable hours for which fees were awarded to allow for meaningful appellate review." *Gates*, 987 F.2d at 1398 (quotations omitted). Although "an elaborately reasoned, calculated or worded order" is not required, "and a brief explanation of how the court arrived at its figures will do, something more than a bald, unsupported amount is necessary." *Chalmers*, 796 F.2d at 1211 n.3.

Once the district court has established the number of hours reasonably expended, the court must determine a reasonable hourly rate taking into account "the experience, skill, and reputation of the attorney requesting fees." *Id.* at 1210. In making this determination, the district court should look to the rates charged for similar services by comparable lawyers in the relevant community. *Id.* at 1210–11.

### III. DISCUSSION

#### A. Appropriateness of Attorney's Fees

Defendants contend their attorney's fees are recoverable because they (1) were the prevailing party in this action and successfully defeated all of Plaintiff's claims; (2) the claims at issue were frivolous and objectively unreasonable; (3) Plaintiff was motived by an improper purpose in pursuing a meritless infringement claim; and (4) awarding fees would support considerations of compensation and deterrence in furtherance of the Copyright Act. (ECF No. 29, Motion for Attorney's Fees ("Mot.") 1.) A careful analysis of the *Lieb* factors counsels in favor of awarding Defendants attorney's fees.

As an initial matter, the Court notes that Defendants were the prevailing party at the Motion to Dismiss stage, and that all of Plaintiff's copyright claims were dismissed with prejudice. (ECF No. 27, Order.) While not dispositive, Defendants'

ability to completely combat Plaintiff's claims is a key component in the attorney's fee calculation. *See Jackson*, 25 F.3d at 890.

Defendants argue that Plaintiff's claims were objectively unreasonable because his copyright claims were manifestly without support, and that Plaintiff could not meet a single factor under the Act's substantial similarity test. (Mot. 6.) The Court agrees; the September 11, 2015 Order granting Defendant's Motion to Dismiss clearly outlines the myriad ways that Plaintiff's *Little White Trip* has no substantial similarity to Defendants' *Cabin in the Woods*. (ECF No. 27, Order.) Where a court finds two works to be so dissimilar that "'no reasonable juror' could conclude that there was substantial similarity on any of the eight elements of the extrinsic test," a Plaintiff "should have known that her claim was objectively unreasonable" and a fee award is appropriate. *Bernal v. Paradigm Talent and Literary Agency*, 2010 WL 6397561 No. CV 07-06445 SVW, *3 (C.D. Cal. June 1, 2010).

The Court also finds that Plaintiff's claim is factually unreasonable. *See Fogerty*, 510 U.S. at 534 n.19 ("objective unreasonableness" can be based on the legal basis for a case and/or the facts underlying the claim itself). Just as this Court held in *Scott v. Meyer*, 2010 WL 2569286 No. CV 09-6076 (ODW) (June 21, 2010 C.D. Cal.) (J. Wright), the "maintenance of copyright claims for a protracted period of time without evidentiary support has in the past been held objectively unreasonable." *Id.* at *3 (citing *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997). Even after Defendants provided Plaintiff with a detailed, eleven-page letter outlining Ninth Circuit copyright law and the failings of Plaintiff's arguments, Plaintiff still doggedly pursued his claims. (*See* Kim Decl., Ex. 4.) As in *Scott*, the Court finds such manifest intent to continue a claim in the face of overwhelming conflicting case law objectively unreasonable.

While a finding of improper purpose or bad faith is not required to award attorney's fees, it may nevertheless be considered at the court's discretion. *Fantasy, Inc.*, 94 F.3d at 555–58. Defendants call the Court's attention to the fact that

Plaintiff's conduct has caused unnecessary delay and duplicative work. (Mot. 9.) After Plaintiff received a letter from Defendants in March 2014 outlining the flaws in his copyright claim, Plaintiff was silent for over a year before filing his Complaint. (ECF No. 1.) His counsel, in turn, failed to inform Defendants' counsel during weeks of meet-and-confer conversations that Plaintiff intended to file an Amended Complaint—even after Defendants reiterated their intentions to move for dismissal. (*Id.* 3; Kim Decl. Ex. 5 33.) Just one day after Defendant filed their 12(b)(6) motion, Plaintiff filed his Amended Complaint, thereby creating duplicative work and causing avoidable delay. (ECF Nos. 11, 14.) Plaintiff's failure to be forthright during the meet-and-confer stage leads the Court to believe that Plaintiff hoped to delay the proceedings and create unnecessarily duplicative work without cause, and therefore the Court finds that Plaintiff acted with improper purpose during this litigation.

Finally, the Court finds that an award of attorney's fees and costs would advance the aims and purposes of the Copyright Act. While the Court is sympathetic to Plaintiff's argument that the purpose of the Copyright Act cannot be to penalize those with sincere beliefs but without financial resources (ECF No. 30, Opposition to Motion to Attorney's Fees ("Opp.") 9.), sincerity alone cannot force an artist to bear the costs of expensive and meritless litigation. If Plaintiff had accepted that his sincere beliefs did not comport with Ninth Circuit case law or had not unnecessarily delayed these proceedings, then attorney's fees would not be awarded. However, the aims of the Act are served by awarding fees in the case at bar; the successful defense against Plaintiff's copyright infringement claims will assure that Mr. Whedon's cinematic work remains available to the public, thus furthering the goal of "stimulat[ing] artistic creativity for the general public good," and perhaps "lead to further creative pieces." *See Fantasy, Inc.*, 94 F.3d at 559. Accordingly, the Court holds that an award of attorney's fees to Defendants in this case is warranted.

### B. Reasonableness of Defendants' Attorneys' Fees

Taking into account the *Johnson-Kerr* factors, the Court questions whether a reasonable amount of time was spent defending against Plaintiff's claims. However, because Defendants requested a drastically reduced rate fee for their services, the Court finds that any unreasonable expenditures of time and resources are ultimately harmless. Therefore, the Court awards Defendants attorney's fees in the amount of $45,269.32 and costs in the amount of $2,021.06.

While Defendants' counsel no doubt expended substantial time in their relatively brief but highly successful litigation of this case, some of the hours billed appear unnecessary or excessive. The Court is particularly concerned about the amount of time that went into the researching and drafting the Motion to Dismiss after first expending approximately 50 hours researching and preparing an eleven-page letter to Plaintiff's counsel detailing the shortcomings of Plaintiff's infringement claim, while simultaneously working on the potential Motion to Dismiss brief. (*See* Kim Decl., Ex. 7.) Defendants ask for compensation for an additional 72 hours of work between the completion of the eleven-page letter and the filing of the May 18, 2015 Motion to Dismiss. The Court, however, does not see how it is "reasonable" to have two partners and two associates researching and writing a brief for such a length of time, especially when the meat of the legal arguments are in the eleven-page document. This letter had already set out the applicable legal standard and applied Plaintiff's purported facts. (Kim Decl., Ex 4.) The hours spent drafting the Motion to Dismiss thus appear partially duplicative.

Furthermore, Defendants' counsel spent an additional thirty-plus hours drafting a second Motion to Dismiss after Plaintiff filed an Amended Complaint. (Kim Decl., Ex. 7.) Such exertions seem unnecessary when Defendants describe the First Amended Complaint as containing only a few new and "inconsequential" allegations. (Mot. 3–4.) If the FAC was, indeed, repetitive of the first Complaint, notwithstanding a few new trivialities, then over thirty hours of legal work, with two partners and an associate, is wholly unnecessary.

However, even with Defendants' duplicative and unreasonable hours, the Court awards Defendants' requested fees and costs in light of counsel's drastically reduced rates. Given each individual attorney's relevant experience, reputation, and skill compared to the rates charged by comparable lawyers and paralegals in the Los Angeles area, the Court finds Defense Counsel's billing rates to be reasonable—but also approves of Defendant's choice to ask for less than half of the market cost for their services. If Defendants billed for the total number of hours worked at their going rates, the bill would total $86,701.29. However, Defendants have adjusted their requested amount and seek only $45,269.32 in fees. (Mot. 14.) Defendants also do not seek remuneration for the 102 hours spent reviewing Plaintiff's opposition papers, drafting a reply, or preparing for a potential hearing on the Motion to Dismiss, which would have added an additional $56,700 at Defendants' reduced rate. (*Id.* 16.)

Therefore, the Court finds the unreasonableness of Defendant's time management to be harmless, as the total fee requested has been drastically reduced; Defendants have chosen not to seek compensation for all tasks completed; and the requested $45,269.32 is reasonable in light of the skills and expertise of Defense Counsel and the work necessary in this litigation.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Attorney's Fees (ECF No. 29) is **GRANTED**, and accordingly shall recover cost and fees in the amount of $47,290.38, inclusive of $2,021.06 in costs.

**IT IS SO ORDERED.**

October 27, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**